1

2

3

4

5

6

7

8

9               UNITED STATES DISTRICT COURT

10              EASTERN DISTRICT OF CALIFORNIA

11                    ----oo0oo----

12

13   SHIMAINE WARD,
                                    NO. 2:10-CV-0019 FCD KJN
14           Plaintiff,

15      v.                          MEMORANDUM AND ORDER

16   ARNOLD SCHWARZENEGGER, in his
     official capacity as Governor
17   for the State of California;
     CALIFORNIA DEPARTMENT OF
18   CORRECTIONS AND
     REHABILITATION; MATTHEW CATE,
19   in his official capacity as
     the Secretary of California
20   Department of Corrections and
     Rehabilitation; MELINDA JAMES;
21   and DOES 1-50, inclusive,

22           Defendants.

23   _____/

24                    ----oo0oo----

25       This matter is before the court on defendants Arnold

26   Schwarzenegger ("Schwarzenegger"), Matthew Cate ("Cate"), and

27   California Department of Corrections and Rehabilitation's

28   ("CDCR") motion to dismiss pursuant to Federal Rules of Civil

                              1

1  Procedure 12(b)(1) and 12(b)(6).  Specifically, defendants

2  Schwarzenegger and Cate move to dismiss plaintiff's federal

3  constitutional claims against them.  Plaintiff Shimaine Ward

4  ("plaintiff" or "Ward") does not oppose this motion.

5  Accordingly, defendants Schwarzenegger and Cate's motion to

6  dismiss is GRANTED.

7      Defendant CDCR moves to dismiss plaintiff's claims on the

8  grounds that it is not a proper defendant and is immune under the

9  Eleventh Amendment.[1]  Plaintiff concedes that CDCR is not a

10 proper defendant with respect to his federal claims, but contends

11 that defendant CDCR is not immune from state law claims under the

12 Eleventh Amendment.  For the reasons set forth below,[2] defendant

13 CDCR's motion to dismiss plaintiff's federal claims is GRANTED

14 and its motion to dismiss plaintiff's state law claims is DENIED.

## BACKGROUND

16     On April 23, 1998, Ward pled guilty to robbery in Contra

17 Costa.  (Compl., Ex. 1 to Notice of Removal, filed Jan. 4, 2010,

18 ¶ 10.)  That same day, he was sentenced to an aggregate term of

19 _____

20    [1]    Defendant CDCR also moved to dismiss plaintiff's state
   law claims on the basis that it is immune from suit pursuant to
21 California Government Code § 844.6.  On August 18, 2010, the
   court issued a Minute Order, directing the parties to file
22 supplemental briefing regarding whether California Government
   Code § 844.6 applies to any or all of plaintiff's claims in light
23 of the California Supreme Court's decision in Sullivan v. County
   of Los Angeles, 12 Cal. 3d 710 (1974).  On August 20, 2010,
24 defendant CDCR filed a supplemental brief, conceding that it was
   not entitled to immunity from liability on plaintiff's false-
25 imprisonment claim.  Subsequently, on September 1, 2010,
   defendant CDCR filed a reply to plaintiff's supplemental
26 opposition, conceding that it was not entitled to immunity from
   liability on plaintiff's other state law claims.

27    [2]    Because oral argument will not be of material
   assistance, the court orders this matter submitted on the briefs.
28 E.D. Cal. L.R. 230(g).

2

1 nine years state prison: a five year term on count one, four

2 consecutive one year sentences on counts two through five, and

3 concurrent three year terms on the remaining nine counts.  Ward

4 received pre-sentence credits of 203 actual days and 100 days

5 conduct credits for a total of 303 days pre-sentence credit.  At

6 the time, robbery was considered a serious felony under Penal

7 code section 1192.7, but not a violent felony under Penal code

8 section 667.5; therefore he was not subject to the 15% limitation

9 on credits.  Ward was sent to the CDCR to serve his sentence.

10 Id.

11      On February 1, 1999, Ward pled guilty to a federal grand

12 jury indictment, charging one count of bank robbery and one count

13 of use of a firearm.  (Id. ¶ 11.)  He was sentenced by this court

14 to an aggregate term of 97 months; the sentence imposed on count

15 one, 37 months, was to run concurrent to the California state

16 sentence Ward was already serving, and the sentence imposed on

17 count two, 60 months, was to run consecutive to his state term.

18 Pursuant to 18 U.S.C. § 3621(b)(4), the court directed Ward to be

19 imprisoned in a California penal institution.  (Id.)

20      Ward was returned to the custody of the CDCR to serve his

21 sentence.  (Id.)  The Federal Bureau of Prisons recognized that

22 the California Department of Corrections and Rehabilitation had

23 primary custodial authority over Ward.  (Id.)  The projected

24 release date as of this custodial transfer was June 18, 2002.

25 (Id.)  At the conclusion of his commitment in the CDCR, Ward was

26 to be transferred to the custody of the Federal Bureau of Prisons

27 to begin serving his remaining sentence: a 60 month consecutive

28 term imposed for use of a firearm.  (Id.)

1   On June 28, 2000, Ward pled guilty to two counts of robbery
2   in Santa Clara County pursuant to a negotiated disposition that
3   he would not serve any additional custody time than that
4   previously imposed on the prior state and federal matters.  (Id.
5   ¶ 12.)  However, after the imposition of this sentence, the CDCR
6   erroneously reset Ward's release date from June of 2002 to July
7   27, 2006.  (Id. ¶ 13.)  Plaintiff alleges that absent this error,
8   Mr. Ward would have concluded his state term and begun serving
9   his federal sentence in June of 2002.  (Id.)
10   On July 11, 2002, Ward filed a petition for a writ of habeas
11   corpus in the Santa Clara Superior Court.  (Id. ¶ 14.)  In that
12   petition, Ward asserted that he had been assured that if he pled
13   guilty he would be sentenced concurrent to his Contra Costa case
14   and would serve no additional time in prison.  (Id.)
15   On May 15, 2003, the Superior Court issued a final order
16   directing that the CDCR deliver Ward to the custody of the
17   Attorney General of the United States or his authorized
18   representative for the purpose of commencing service of the 60
19   month consecutive sentence imposed in the federal action.  (Id. ¶
20   15.)  On May 16, 2003, a deputy clerk of the Santa Clara Superior
21   Court served Jack Marshall, acting warden of North Kern state
22   prison with a copy of the order.  (Id. ¶ 16.)  The order was
23   received by the warden's office on June 2, 2003.  (Id.)  The CDCR
24   apparently attempted to comply with this order, but the federal
25   government refused to take custody of him at this time.  (Id.)
26   In July 2006, federal marshals took custody of Ward.  Ward
27   then initiated federal habeas proceedings to receive credit
28   against his federal sentence for the additional time he spent

4

1  incarcerated in a state facility.  (Id. ¶ 17.)  On May 23, 2008,

2  the Santa Clara Superior Court issued an order vacating Ward's

3  seven year sentence imposed on July 14, 2000 and resentenced Ward

4  to a term of two years *nunc pro tunc* to July 14, 2000, which was

5  to run concurrent to any state or federal sentence.  (Id. ¶ 18.)

6  The court further found that Ward had completed service of all

7  imposed California state prison terms on June 18, 2002 and

8  thereafter, was no longer serving any prison sentence for any

9  California state offense.  Notice of the same was timely provided

10 to CDCR.  (Id.)

11     Plaintiff alleges that the CDCR failed to conform its

12 records to reflect the May 23, 2008 court order and sentence.

13 (Id. ¶ 19.)  As a result, the federal authorities were noticed of

14 the order but would not adjust Ward's sentence until the CDCR

15 updated its records.  (Id.)  Ward subsequently filed a motion in

16 the Santa Clara Superior Court, requesting the court to issue an

17 order directing the CDCR to conform its records.  (Id. ¶ 20.)

18 Plaintiff alleges that his requests for correction were largely

19 ignored by the CDCR.  (Id. ¶ 21.)

20     Plaintiff alleges that if he had been properly transferred

21 to federal custody by the CDCR on June 18, 2002, he would have

22 been released from federal custody no later than June 18, 2007.

23 (Id. ¶ 22.)  Plaintiff further alleged that had he been

24 transferred to federal custody immediately after the May 23, 2008

25 order, he would have been immediately released.  (Id.)  Ward was

26 not released from federal custody until December 1, 2008.  (Id.)

27     On October 14, 2009, plaintiff filed a complaint, alleging

28 that defendants violated various constitutional rights and

1  committed negligence, false imprisonment, and intentional and

2  negligent infliction of emotional distress.  Defendants

3  Schwarzenegger and James removed the action to this court on

4  January 4, 2010.  On January 12, 2010, defendant Cate and CDCR

5  filed a notice of Joinder in the removal.

**ANALYSIS**

7     Defendant CDCR moves to dismiss plaintiff's state law claims

8  against the CDCR on the basis that it is a state agency entitled

9  to immunity under the Eleventh Amendment.  Plaintiff opposes the

10  motion, arguing that CDCR waived such immunity when it removed

11  the case to federal court.

12     The Eleventh Amendment grants a State immunity from suit in

13  federal court by its own citizens.  U.S. Const., Amdt. 11 ("The

14  Judicial power of the United States shall not be construed to

15  extend to any suit . . . commenced or prosecuted against one of

16  the United States . . . ."); Lapides v. Bd. of Regents of the

17  Univ. Sys. of Georgia, 535 U.S. 613, 616 (2002) (citing Hans v.

18  Louisiana, 134 U.S. 1 (1890)).  However, a State may waive its

19  Eleventh Amendment immunity from suit in a federal court.

20  Lapides, 535 U.S. at 618.

21     Specifically, the Supreme Court has held that a State's

22  removal of a case from state court to federal court voluntarily

23  invokes the federal court's jurisdiction.  Id. at 620.  The Court

24  reasoned that "[i]t would seem anomalous or inconsistent for a

25  State both (1) to invoke federal jurisdiction, thereby contending

26  that the 'Judicial power of the United States' extends to the

27  case at hand, and (2) to claim Eleventh Amendment immunity,

28  thereby denying that the 'Judicial power of the United States'

6

1  extends to the case at hand." Id. at 619.  Indeed, "where a

2  State *voluntarily* becomes a party to a cause and submits its

3  rights for judicial determination, it will be bound thereby and

4  cannot escape the result of its own voluntary act by invoking the

5  prohibitions of the Eleventh Amendment." Id. (emphasis in

6  original) (quoting Gunter v. Atl. Coast Line R.R. Co., 200 U.S.

7  273, 284 (1906)).  Accordingly, the Court concluded that even

8  though a State may be brought involuntarily into a case as a

9  defendant in state court proceedings, that defendant voluntarily

10  invokes the jurisdiction of the federal court when it agrees to

11  remove the case.  Id.

12      In this case, defendant CDCR voluntarily joined in the

13  notice of removal after defendants Schwarzenegger and James

14  initially removed the case.  As such, this case is controlled by

15  the Supreme Court's holding in Lapides, and defendant CDCR cannot

16  invoke immunity under the Eleventh Amendment.  Accordingly,

17  plaintiff is not barred from bringing suit against CDCR.

18  Therefore, defendant CDCR's motion to dismiss plaintiff's state

19  law claims on the basis of Eleventh Amendment immunity is DENIED.

20                          **CONCLUSION**

21      For the foregoing reasons, defendants Schwarzenegger and

22  Cate's motion to dismiss is GRANTED, and defendant CDCR's motion

23  to dismiss is GRANTED in part and DENIED in part.

24      IT IS SO ORDERED.

25  DATED: September 10, 2010

26  _____

27  FRANK C. DAMRELL, JR.
    UNITED STATES DISTRICT JUDGE

28