IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SHIMAINE WARD,

       Plaintiff,                No. 2:10-cv-0019 KJN

    vs.

BROWN, et al.,

       Defendants,         <u>ORDER</u>

_____/

I. <u>Introduction</u>

       Plaintiff, proceeding through counsel, seeks relief pursuant to 42 U.S.C. § 1983. All parties consented to proceed before the undersigned for all purposes. <u>See</u> 28 U.S.C. § 636(c). Plaintiff claims that defendants' refusal to correct his release date from state prison caused him to be over-incarcerated in federal prison, in violation of his constitutional rights, and California law. Pending before the court is defendants' motion for summary judgment. Plaintiff filed an opposition, and defendants filed a reply. After supplemental briefing, oral argument was heard on August 2, 2012, before the undersigned. As set forth below, this court finds that defendants' motion for summary judgment is granted in part and denied in part.

////

////

1

II.  Plaintiff's Allegations and Background

On April 23, 1998, plaintiff pled guilty to robbery in Contra Costa County.  [(Dkt. No. 1 at 6.)]  That same day, he was sentenced to an aggregate term of nine years in state prison:  a five year term on count one, four consecutive one year sentences on counts two through five, and concurrent three year terms on the remaining nine counts.  [Plaintiff] received pre-sentence credits of 203 actual days and 100 days conduct credits for a total of 303 days pre-sentence credit.  At the time, robbery was considered a serious felony under California Penal Code § 1192.7, but not a violent felony under California Penal Code § 667.5; therefore, he was not subject to the 15% limitation on credits.  [Plaintiff] was sent to the California Department of Corrections and Rehabilitation ("CDCR") to serve his sentence.  [Dkt. No. 1 at 6.)]

On February 1, 1999, [plaintiff] pled guilty to a federal grand jury indictment, charging one count of bank robbery and one count of use of a firearm.  (Id.)  [Plaintiff] was sentenced to an aggregate term of 97 months; the sentence imposed on count one, 37 months, was to run concurrent to the California state sentence [plaintiff] was already serving, and the sentence imposed on count two, 60 months, was to run consecutive to the state term.  Pursuant to 18 U.S.C. § 3621(b)(4), the federal district court directed [plaintiff] to be imprisoned in a California penal institution.  (Dkt. No. 1 at 6.)

[Plaintiff] was returned to the physical custody of the CDCR to serve his sentence.  (Id.)  The Federal Bureau of Prisons ("BOP") recognized that the CDCR had primary custodial authority over [plaintiff].  (Id.)  The projected release date as of this custodial transfer was June 18, 2002.  (Id.)  At the conclusion of the CDCR commitment, [plaintiff] was to be transferred to the custody of the BOP to begin serving his remaining sentence: a 60 month consecutive term imposed for use of a firearm.  (Id.)

On June 28, 2000, [plaintiff] pled guilty to two counts of robbery in Santa Clara County pursuant to a negotiated disposition that [plaintiff] would not serve any additional custody time than that previously imposed on the prior state and federal convictions.  [(Dkt. No. 1 at 6-7.)]  However, after the imposition of this sentence, the CDCR erroneously reset [plaintiff's] release date from June of 2002 to July 27, 2006.  [(Id., at 7.)]  [Plaintiff] alleges that absent this error, [plaintiff] would have concluded his state term and begun serving his federal sentence in June of 2002.  (Id.)

On July 11, 2002, [plaintiff] filed a petition for a writ of habeas corpus in the Santa Clara Superior Court.  (Id.)  In that petition, [plaintiff] asserted that he had been assured that if he pled guilty he would be sentenced concurrent to the Contra Costa case and would serve no additional time in prison.  (Id.)

2

On May 15, 2003,[1] the Contra Costa Superior Court issued a final order directing the CDCR deliver [plaintiff] to the custody of the Attorney General of the United States or his authorized representative for the purpose of commencing service of the 60 month consecutive sentence imposed in the federal action.  (Id.) On May 16, 2003, a deputy clerk of the Santa Clara Superior Court served Jack Marshall, acting warden of North Kern State Prison with a copy of the May 15, 2003 order.  (Id.)  The order was received by the warden's office on June 2, 2003.  (Id.)  The CDCR apparently attempted to comply with this order, but the federal government refused to take custody of [plaintiff] at that time.  (Id.)

In July 2006, federal marshals took custody of [plaintiff]. [Plaintiff] then initiated federal habeas proceedings to receive credit against his federal sentence for the additional time he spent incarcerated in state prison.  (Id.)  On May 23, 2008, the Santa Clara Superior Court issued an order vacating [plaintiff's] seven year sentence imposed on July 14, 2000 and re-sentenced [plaintiff] to a term of two years *nunc pro tunc* to July 14, 2000, which was to run concurrent to any state or federal sentence.  (Id. at 7-8.)  The court further found that [plaintiff] had completed service of all imposed California state prison terms on June 18, 2002, and was no longer serving any prison sentence for any California state offense.  (Id. at 8.)  Notice of the same was timely provided to CDCR.  (Id.)

[Plaintiff] alleges that the CDCR failed to conform its records to reflect the May 23, 2008 court order and sentence.  (Id.)  As a result, the federal authorities were noticed of the order, but would not adjust [plaintiff's] sentence until the CDCR updated its records.  (Id.)  [Plaintiff] subsequently filed a motion in the Santa Clara Superior Court, requesting the court to issue an order directing the CDCR to conform its records.  (Id.)  [Plaintiff] alleges that his requests for correction were largely ignored by the CDCR.  (Id.)

[Plaintiff] alleges that if he had been properly transferred to federal custody by the CDCR on June 18, 2002, he would have been released from federal custody no later than June 18, 2007.  (Id.)  [Plaintiff] further alleges that had he been transferred to federal custody immediately after the May 23, 2008 order, he would have been immediately released.  (Id.)  However, [plaintiff] was not released from federal custody until December 1, 2008.  (Id.)

---

[1]  The judge signed the order on May 15, 2003, but it appears it was filed or endorsed on May 16, 2003.  (Dkt. No. 58-3 at 33.)  The court will use the May 15, 2003 date used by the parties.

On October 14, 2009, [plaintiff] filed a complaint, alleging that defendants violated various constitutional rights and committed negligence, false imprisonment, and intentional and negligent infliction of emotional distress, in violation of California state law. Defendants Schwarzenegger and James removed the action to this court on January 4, 2010.  On January 12, 2010, defendant Cate and CDCR filed a notice of joinder in the removal.

(Dkt. No. 28 at 2-6.)

On September 10, 2010, the motion to dismiss plaintiff's federal constitutional claims filed by defendants Schwarzenegger and Cate was granted, and CDCR's motion to dismiss plaintiff's federal claims was granted, but its motion to dismiss plaintiff's state law claims was denied.  (Dkt. No. 28.)  Thus, this action is proceeding on plaintiff's claims that defendant James violated plaintiff's rights under the Fourth, Fifth, Ninth, and Fourteenth Amendments; defendants CDCR, Cate, and James falsely imprisoned plaintiff; defendant James intentionally caused plaintiff to suffer emotional distress; defendants CDCR, Cate, and James were negligent and negligently caused plaintiff to suffer emotional distress; and defendants CDCR, Brown, and Cate negligently hired, retained, supervised, and disciplined their subordinates.

III.  Motion for Summary Judgment

Defendants move for summary judgment as to the following claims and parties:

1.  Federal constitutional claims against defendant James;

2.  False imprisonment claims against defendants CDCR, Cate, Brown, and James;

3.  Intentional infliction of emotional distress claim against defendant James;

4.  Negligence and negligent infliction of emotional distress claims against defendant James;

5.  Negligence, negligent infliction of emotional distress, and negligent hiring claims against defendants Cate and Brown; and

6.  Whether defendant James is entitled to qualified immunity.

4

IV.  <u>Concessions</u>

  Plaintiff conceded dismissal of the Fifth Amendment claim (dkt. no. 65 at 5), and plaintiff's state law claims, with the exception of the false imprisonment claim, as to defendant Brown (dkt. no. 78 at 1).

V.  <u>Legal Standard for Summary Judgment</u>

  Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil procedure 56(c) is met.  "The judgment sought should be rendered if . . . there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  <u>Id.</u>, citing Fed. R. Civ. P. 56(c).  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  <u>Id.</u> at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  <u>Id.</u> at 323.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  <u>Id.</u>

  If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  <u>See</u>

1   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

2   establish the existence of such a factual dispute, the opposing party may not rely upon the

3   allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

4   form of affidavits, and/or admissible discovery material in support of its contention that the

5   dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

6   must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

7   of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

8   (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

9   1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

10  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

11  1436 (9th Cir. 1987).

12          In the endeavor to establish the existence of a factual dispute, the opposing party

13  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

14  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

15  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary

16  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

17  genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

18  committee's note on 1963 amendments).

19          In resolving a summary judgment motion, the court examines the pleadings,

20  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

21  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

22  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

23  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

24  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

25  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

26  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  <u>Matsushita</u>, 475 U.S. at 586 (citation omitted).

VI.  <u>Facts</u>

Except as otherwise noted, the court finds the following facts are undisputed.

1.  On April 23, 1998, the Contra Costa County Superior Court convicted plaintiff of a series of robberies and sentenced him to a nine-year state prison term.

2.  On May 27, 1998, plaintiff began serving his prison term on the 1998 Contra Costa County sentence with the CDCR.

3.  On May 27, 1998, CDCR determined plaintiff's release date to be June 18, 2002.

4.  On February 4, 1999, the United States District Court for the Eastern District of California convicted plaintiff of robbery and using a firearm, and sentenced plaintiff to a 97 month federal prison term, 37 months of which would run concurrent to plaintiff's state sentence while the remaining 60 months would run consecutive to plaintiff's state sentence.

5.  Plaintiff's release date from CDCR remained June 18, 2002.  (CDC 112 Chronological History, p. 1.)

6.  On June 28, 2000, plaintiff and the Santa Clara County District Attorney's office entered into a plea agreement whereby in consideration of his pleading guilty to two robberies, plaintiff was promised that the conviction would not "add any more time to [a pre-existing state sentence arising from a Contra Costa conviction]."[2]

7.  On June 28, 2000, (1) plaintiff had already served 27 months on the Contra Costa County term before the court entered the Santa Clara County term; and (2) plaintiff's Santa

---

[2]  Defendants contend this plea agreement was "erroneous."

Clara County conviction reduced plaintiff's credit-earning ability on the 1998 Contra Costa County sentence from fifty percent to fifteen percent during the remainder of the Santa Clara County term, pursuant to <u>People v. Ramos</u>, 50 Cal. App. 4th 810 (1996).[3]

8.  On July 14, 2000, the Santa Clara Superior Court convicted plaintiff of two robberies and sentenced him to a seven-year state prison term, to run concurrent with the 1998 nine-year prison term.

9.  Upon receiving the Abstract of Judgment for plaintiff's 2000 Santa Clara County conviction, despite the terms of the plea agreement, CDCR officials re-calculated plaintiff's prison term in accordance with the California Penal Code and case law, and changed plaintiff's earliest possible release date from June 18, 2002, to June 28, 2006.

10.  On March 5, 2001, CDCR officials re-calculated plaintiff's release date as July 28, 2006, in accordance with <u>Ramos</u>, 50 Cal. App. 4th at 810.

11.  On July 11, 2002, plaintiff filed a petition for writ of habeas corpus in the Santa Clara County Superior Court, <u>Ward v. People of the State of California</u>, C063709.  (Dkt. No. 71 at 16.)  Plaintiff sought correction of his release date based on the plea agreement entered in Case No. C063709, in which he agreed to plead guilty in exchange for the promise of no additional time added, concurrent to the nine year sentence imposed by the Contra Costa County Superior Court in Case No. 972108502.  (Dkt. No. 71 at 24.)  Plaintiff alleged he would serve an additional 4 years and 10 days if the court did not modify his release date.  (<u>Id.</u>)  Petitioner informed the court that he attempted to correct the sentence calculation error through the administrative appeal process, but that the discrepancy could not be corrected through the administrative appeal process.  (<u>Id.</u> at 20.)  Plaintiff provided a copy of the transcript from the

////

[3]  Defendants contend that the agreement violated California Penal Code §§ 2933.1 and 667.5, subdivision (c), alleging that plaintiff's Santa Clara County conviction required him to serve 85% of the seven year term.

June 28, 2000 change of plea hearing, at which the court approved the plea and conditions, and

stated:

> I would not sentence the [plaintiff] to more than the concurrent
> term even if he was going to trial and be convicted on all the
> charges unless material facts different than those of which I'm
> aware of would have become known to me.
>
> . . . .
>
> THE COURT:  What the attorney has told me is that you're going
> to go ahead and plead guilty, admit the gun charge on the condition
> that I sentence you to State prison concurrently to the sentence
> you're already serving on the other robbery.  Do you understand
> that?
>
> [PLAINTIFF]:  Yes.
>
> THE COURT:  That means the [sic] doesn't add anymore time to it
> but serve that time concurrent.

(Dkt. No. 72 at 4; 58-3 at 19-20.)  Plaintiff was sentenced on July 14, 2000, to a total of seven

years in state prison to be served concurrent to his Contra Costa County and federal convictions.

(Dkt. No. 72 at 9-10.)

        12.  On September 3, 2002, a CDC 1130, "LPU Documents Transmittal," was

completed by B. Tabarez, NKSP, and sent to the Legal Processing Unit ("LPU").  (Elliott Depo.

at 182 (Ex. N).)  The type of referral was "determinate sentence law (DSL) problem case," and

was marked routine.  (Id.)  The "discrepant notice" box was also marked.  The nature of the

problem was described as:

> M.O. and transcripts state cases to run concurrent.  However,
> A.O.J. refers cases are to run consecutive.  I've also attached U.S.
> District Court Case #98CR00144 reflect[ing] CNT 002 to run
> consecutive to state sentence.  Post sentence was granted for 11
> days.  [I]s this correct.  Please review for clarification.  Thank you.

(Elliott Depo., at 172 (Ex. N).)  On February 14, 2003, the LPU referral for Case No. CC063709

was returned stating that no issue exists because the "Other Orders" portion of the abstract

clearly indicated this sentence was to run concurrent to plaintiff's federal case and Contra Costa

County Case 180856-7.  (Id. at 173.)

1    13. Plaintiff's central file contains a CDCR 850 Detainer Summary that contains

2 the following  handwritten entries:

3          10-29-02          Received request for In re Stoliker[4]
                             preparing paper for signatures
4
          11-2-02           Certified copy mailed to
5                            Bureau of Prisons

6          5/27/03           follow up - per Kim Beakey
                             U.S. Bureau of Prisons (925) 803-4700
7                            Correctional Programs Dept. request
                             denied will fax copy of denial letter.
8
          5/27/03           Denial letter enclosed.
9

10 (Dkt. No. 70 at 9.)[5]

11    14. On October 31, 2002, plaintiff signed a request for transfer under In re

12 Stoliker, which the BOP received on November 7, 2002.  (Dkt. No. 70 at 11-12.)

13

14    [4] In re Stoliker, 49 Cal.2d 75 (1957) (granted a state prisoner's request for a transfer to
federal custody to allow him to serve his state sentence concurrently with a federal sentence.)

15          Consistent with that statutory mandate, a long line of California
            cases holds that when a criminal defendant receives a California
16          sentence which is to run concurrently with a preexisting foreign
            sentence (i.e., one imposed by another jurisdiction), the defendant
17          is entitled to be transferred to the foreign authorities, and to have
            the foreign prison designated as the place for service of the
18          California sentence.  See, e.g., In re Stoliker, 49 Cal. 2d 75, 76, 315
            P.2d 12, 13 (1957); In re Altstatt, 227 Cal. App.2d 305, 306, 38
19          Cal. Rptr. 616, 617 (1964).  This ensures that the concurrent aspect
            of the sentence is made effectual and not nullified.  Id.
20
            Alternatively, if the California sentence is longer than the sentence
21          from the other jurisdiction, [Cal. Penal Code] § 2900(b)(2) also
            allows the California prison to be designated as the site for
22          concurrent service of both sentences.

23 Cozine v. Crabtree, 15 F. Supp. 2d 997, 1002 (D. Or. 1998).

24    [5] The parties dispute the meaning of the information set forth on the CDC 850 form,
dated May 27, 2003.  Plaintiff contends the May 27, 2003 entry was a routine follow-up,
25 unrelated to the 2003 order discussed in ¶ 16 below.  Defendants contend that the detainer
summary demonstrates that the BOP refused to accept plaintiff following the May 15, 2003
26 order.

15.  On December 6, 2002, Lyndell Penney, Correctional Programs Designator with the BOP, denied the request for plaintiff's transfer, claiming that because plaintiff's state and federal terms were concurrent to each other, the State of California had primary custodial authority.  (Dkt. No. 70 at 14.)  Ms. Penney stated that a detainer would be lodged by the United States Marshals Service to be exercised upon completion of plaintiff's State term.  (Id.)

16.  On May 15, 2003, the Santa Clara County Superior Court granted a habeas petition filed by plaintiff, and ordered that plaintiff be delivered into federal custody to begin his federal sentence.  The order, entitled "Final Order," reads as follows:

> TO:   The California Department of Corrections
>       The People of the State of California as represented by the
>       Santa Clara County District Attorney's Office, and
>       The WARDEN at the state prison facility housing [plaintiff],
>
> You are hereby ordered to deliver SHIMAIN A. WARD into the custody of the Attorney General of the United States, or his authorized representative, as directed by this order granting his habeas corpus petition.
>
> After having considered the applicable law, the briefs and the arguments presented by the parties in this matter, it appears to this Court that [plaintiff] is entitled to be delivered forthwith into the custody of the federal authorities for the purpose of serving a sentence imposed by the United States District Court.  (In re Harris (1964) 60 Cal.2d 878,[6] In re Stoliker (1957) 49 Cal.2d 75.)

---

[6] In Harris, the court stated:

> It is therefore ordered that the warden of the state prison at Folsom deliver petitioner into the custody of the Attorney General of the United States or his authorized representative as directed in the judgment of conviction dated October 9, 1962, in United States of America v. Willard Wess Harris, Number 31170-Criminal, in the United States District Court, Southern District of California, Central Division.  There is no merit in petitioner's contention that the judgment of the Superior Court of Sacramento County is void.  It is therefore further ordered that when he is returned to the authorities of this state, petitioner shall be granted credit on his California sentence for the period of time served pursuant to the foregoing judgment of the United States District Court.  (In re Stoliker, 49 Cal.2d 75, 78 [315 P.2d 12].)

In re Harris, 60 Cal. 2d at 878.

1          It is so ordered.

2          Counsel for [plaintiff] should serve this order upon the warden
having custody over [plaintiff] and may apply to this court for any
3  further orders that may be necessary to effectuate enforcement.

4  DATED:  May 15, 2003

5       /s/   RISE JONES PICHON
        JUDGE OF THE SUPERIOR COURT
6

7  cc:    [Plaintiff's] Attorney (Jack Gordon)
        District Attorney (Ron Rico)
        CDC
8

9  (Dkt. No. 58-3 at 33-34.)

10       17.  On May 16, 2003, the Clerk of the Santa Clara County Superior Court mailed

11  a copy of the May 15, 2003 final order on plaintiff's counsel, Jack Gordon; District Attorney Ron

12  Rico; and the Acting Warden of North Kern State Prison, John Marshall.  (Dkt. No. 70 at 20.)

13       18.  On May 27, 2003, K. Beakey faxed a copy of the 2002 letter from the BOP to

14  a "Liz Samora" with "Kern St." at "661-721-6209."  (Dkt. No. 79 at 4.)

15       19.  On May 29, 2003, Jack Gordon, counsel for plaintiff, mailed a copy of the

16  May 15, 2003 order to the Office of the Warden, North Kern State Prison, in Delano.  (Dkt. No.

17  70 at 21.)

18       20.  On July 28, 2006, CDCR paroled plaintiff and transferred him to federal

19  custody.

20       21.  Following receipt of a letter from plaintiff, on December 5, 2007, the Santa

21  Clara County Superior Court issued an order "to show cause why [plaintiff] was not entitled to

22  some sort of court ordered relief."  (Dkt. No. 71 at 7.)  Plaintiff was also appointed new counsel.

23  (Id.)  The 2007 order was served on plaintiff, his prior and current attorneys, and the district

24  attorney.  (Id. at 8.)

25       22.  On December 21, 2007, the CDCR filed an informal response to the order to

26  show cause stating:

1

> This letter is to notify the Court that the [CDCR] takes no position
> in this matter.  The December 5, 2007 Order to Show Cause
> references a 2003 court order directing that [plaintiff] be delivered
> into federal custody.  At that time [plaintiff] was in the custody of
> the [CDCR], and the [CDCR] attempted to comply with the order
> by delivering [plaintiff] into federal custody.  However, the federal
> government refused to take custody of [plaintiff].
>
> [Plaintiff] is now in federal custody, and his complaint about his
> credit calculations appear to concern the manner in which the
> federal [BOP] is computing his release date.  Thus, the [CDCR]
> takes no position in this matter.  Thank you.

/s/    Anya M. Binsacca
       Supervising Deputy Attorney General
For    EDMUND G. BROWN, JR.
       Attorney General

(Dkt. No. 72 at 25.)[7]

23.   On May 23, 2008, the Santa Clara County Superior Court issued an order

vacating plaintiff's Santa Clara conviction and re-sentencing him to a different term such that

plaintiff should have completed service of all state prison terms on June 18, 2002.  The court

stated as follows:

> The Court finds that in order to give [plaintiff] the benefit of the
> plea bargain entered into on June 28, 2000, and for which he has
> already fully served the agreed upon term, that the seven-year state
> prison sentence imposed on July 14, 2000, must be vacated, and
> [plaintiff] must be sentenced to an aggregate term of two years in
> state prison in the above-entitled matter *nunc pro tunc* to July 14,
> 2000.  That sentence will run concurrent to any other State or
> Federal prison term [plaintiff] is now serving or was serving as of
> July 14, 2000.
>
> The Court finds that the plea bargain entered June 28, 2000, shall
> be specifically enforced and that [plaintiff] shall be sentenced *nunc
> pro tunc* to July 14, 2000, to a mitigated term of two years state
> prison as to count two and a concurrent term of two years as to
> count one of the amended information.  Punishment for the firearm
> use enhancement provided in Penal Code section 12022.5(a)(1)
> shall be stricken.  The Court also strikes the limitation on accruing
> work time credits provided in Penal Code section 2933.1 for these
> offenses.  Striking both the punishment for the firearm use

---

[7] Plaintiff contends that the reasons provided in the 2007 letter are not exclusive.  (Pl.'s Ex. E, Bates 0133.)

enhancement and the limitation on accruing work time credits is required by the due process clause of the Fourteenth Amendment . . . and California law, . . . in order for [plaintiff] to receive the sentence provided in the plea bargain.

Pursuant to an order of this Court, information provided by the California Department of Corrections and Rehabilitation indicates that if [plaintiff] is sentenced to a two year aggregate term nunc pro tunc to July 14, 2000, in the above-entitled matter that he would have completed service of all state prison terms he was serving for convictions of California offenses on June 18, 2002, and would on that date have been released from the physical custody of the California Department of Corrections and Rehabilitation. [Plaintiff] has stipulated that this calculation is correct.

Based on the information provided by the California Department of Corrections and Rehabilitation and stipulation by [plaintiff], the Court finds that [plaintiff] completed service of all imposed California state prison terms on June 18, 2002, and thereafter was no longer serving any prison sentence for any California State offense.

This Court reserves the right to make such further orders which may be necessary to effectuate enforcement of this order or the two year state prison sentence it imposed on May 23, 2008, in the above-entitled matter.

Dated: May 23, 2008.

/s/  ALDEN E. DANNER
JUDGE OF THE SUPERIOR COURT

(Dkt. No. 73 at 13-14.)  The May 23, 2008 order was served by mail on the District Attorney, plaintiff's attorney, the Office of the Attorney General, the CDCR, and the Warden of the MCFP Springfield Medical Center where plaintiff was incarcerated at the time.  (Dkt. No. 73 at 17.)

24.  On June 24, 2008, defendant James received the revised May 23, 2008 Abstract of Judgment[8] and updated plaintiff's case records.

---

[8]  The Abstract of Judgment recounted the convictions as revised by the May 23, 2008 order, and included the following text:

Deft's prison term and/or sentence term will run concurrent to any other state or federal prison term [plaintiff] is now serving or was serving as of 7/14/00.  Deft's sentence is nunc pro tunc to 7/14/00. Deft's original 7 year term is vacated.  All fines/fees will remain in full force and effect.  Concurrent to Contra Costa case #180856-7

1      25. After receiving plaintiff's May 23, 2008 Abstract of Judgment, defendant

2   James did not revise plaintiff's release date.[9]

3      26. Because defendant James did not change plaintiff's release date after

4   receiving plaintiff's May 23, 2008 Abstract of Judgment, plaintiff's release date did not

5   correspond to the finding noted in the Santa Clara County Superior Court's order that plaintiff

6   completed service of all state prison terms on June 18, 2002.

7      27. On August 12, 2008, Bill Parrish, Legal Instrument Examiner, BOP,

8   Designation Sentence Computation Center ("DSCC"), wrote the CDCR and stated:

9          (a) he received an order indicating plaintiff completed service of all

10   imposed California state prison terms on June 18, 2002;

11          (b) he contacted CDCR and spoke with "an analyst" who indicated

12   plaintiff paroled from the state term on July 27, 2006, and not on June 18, 2002, as indicated on

13   the order;

14          (c) he provided a copy of the court order, and requested clarification if the

15   court order affected all court orders back to 1998;

16          (d) he requested the CDCR to review documents and, if required, re-

17   calculate the state sentence "as this sentence will affect inmates' current Federal sentence."  (Dkt.

18   No. 70 at 33.)

19      28. In late September or early October 2008, the BOP contacted defendant James

20   and inquired about plaintiff's release date from state prison.

21   _____

22          & Federal case #S-98-00144.  "Punishment for the firearm use
       enhancement provided in PC 12022.5(a)(1) shall be stricken.  The
23       court also strikes the limitations on accruing work time credits
       provided in PC 2933.1.  Deft's sentence deemed served on 6/18/02.["]

24   (Dkt. No. 58-3 at 44.)

25          [9] Defendants contend defendant James did not revise plaintiff's release date because the
     term on the Contra Costa County case now controlled because it was the longer term.  Plaintiff
26   denies this contention, citing the chronological history and Bates Nos. 006-007; 046.

1      29.  Defendant James informed the BOP that plaintiff's release date was July 28,

2  2006.  (Dkt. No. 73 at 19.)

3      30.  As a Case Records Analyst, defendant James' duties required that when she

4  received court orders or updated abstracts of judgment for CDCR inmates, she would update the

5  inmates' prison files and re-calculate their release dates.

6      31.  Defendant James' duties also required that whenever new case law was

7  issued, changing the way prison terms were calculated, she had to review all CDCR inmates'

8  prison files and update their release dates.

9      32.  Defendant James' duties did not require her to conduct independent reviews

10  of inmates' prison files to ensure the accuracy of their release dates, nor was she required to

11  contact other institutions to inform them of CDCR inmates' updated release dates.

12      33.  On October 8, 2008, Marty C. Anderson, Warden (federal), notified

13  plaintiff's lawyer that:

14          (a) Plaintiff filed an administrative remedy in August of 2008, resulting in

15  the Warden's consultation with the Designation Sentence Computation Center ("DSCC").

16          (b) The DSCC determined the BOP may adjust their sentence computation

17  if the state CDCR adjusted their computation based on the state court order.

18          (c) The DSCC contacted the CDCR on two separate occasions, but the

19  CDCR confirmed that plaintiff's state sentence remained unchanged.

20          (d)  A final determination, after a second review as requested by plaintiff

21  and his lawyer, remained unchanged.

22          (e)  This issue was referred to Correctional Case Records Analyst, Melinda

23  James of the CDCR, who affirmed that plaintiff's original parole from his state sentence was July

24  28, 2006.

25          (f)  Thus, the DSCC calculated plaintiff's release date from the BOP as

26  December 2, 2010.  (Dkt. No. 73 at 19.)

1      34.  On December 1, 2008, CDCR advised the BOP that plaintiff's release date

2   from state prison was May 15, 2003.[10]

3      35.  Based upon the information received from CDCR regarding plaintiff's May

4   15, 2003 release date, the BOP re-calculated plaintiff's release date from federal prison, and on

5   December 1, 2008, plaintiff was released from federal prison.

6      36.  On December 5, 2008, the Santa Clara County Superior Court issued an order

7   requiring CDCR to amend its records to expressly state that on June 18, 2002, plaintiff

8   completed service of all California State prison terms before June 18, 2002, and thereafter was

9   no longer serving any prison sentence for any California State offense.

10      37.  On February 3, 2009, the CDCR filed a petition for writ of mandate or

11   prohibition with the Court of Appeal, Sixth Appellate District in California Department of

12   Corrections v. Superior Court (Ward), No. H033823, requesting that the December 5, 2008 order

13   requiring the CDCR to correct its records to reflect the May 23, 2008 order be vacated.  (Dkt. No.

14   73 at 4.)  On April 1, 2009, the Sixth Appellate District summarily denied the petition.  (Id.)

15      38.  On April 20, 2009, defendant James updated CDCR's records to reflect

16   plaintiff's June 18, 2002 release date from state prison, in accordance with the December 5, 2008

17   order.

18      39.  In reviewing and updating plaintiff's release date in his CDCR prison file,

19   defendant James' sole motivation was to adhere to her job duties.

20      40.  In reviewing and updating plaintiff's release date in his CDCR prison file,

21   defendant James was not motivated by any negative feelings or ill will toward plaintiff.

22   ////

23

24      [10]  Defendants contend that plaintiff's new May 15, 2003 release date was recalculated on
   November 26, 2008, in accordance with the May 23, 2008 order and People v. Ramos, 50 Cal.
25   App. 4th 810 (1996), citing plaintiff's chronological history, at 3.  Plaintiff disputes this fact,
   citing plaintiff's chronological history, and Ex. A to Mahler Decl., Bates Nos. 006, 007, 013,
26   046, 067.

41.  From 1981 through the present, CDCR adhered to a certain procedure for updating inmates' prison files, including re-calculating release dates.  Whenever a new court order or Abstract of Judgment is issued, it is forwarded to a Case Records Analyst working at the institution where the inmate is housed.  If the institution believes there may be a discrepancy in the court documents they can, at any time, notify the Legal Processing Unit, where the documents will be reviewed for any discrepancies.  If an inmate is on parole or discharged when a new court order or Abstract of Judgment is issued, it is forwarded to a Case Records Analyst at Case Records North, Case Records South, or Archives.  The Case Records Analyst places the court order or Abstract of Judgment in the inmate's central file and then reviews the applicable case law and the California Penal Code to re-calculate the inmate's release date.  The Case Records Analyst notes the re-calculated release date in the inmate's chronological history portion of the file.  If the Case Records Analyst wants to verify or further discuss her calculation of an inmate's release date, she speaks with a Case Records Supervisor at her location.  If the Case Records Supervisor wants to verify or further discuss the calculation of an inmate's release date, she contacts the Case Records Manager at her location.  If the Case Records Manager wants to verify or further discuss the calculation of an inmate's release date, she contacts a Case Records Administrator at Case Records Services.  If a Case Records Administrator wants to verify or further discuss the calculation of an inmate's release date, she contacts the Chief of Case Records Services.

VI.  <u>Constitutional Claims</u>

Plaintiff alleges that defendant James acted under color of state law to deprive plaintiff of the following constitutional rights:

> 1.  The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments;
>
> 2. . . . .[11]

---

[11]  As noted above, plaintiff concedes the Fifth Amendment claim should be dismissed.

3.  The right to equal protection of the laws, as guaranteed by the
Fourteenth Amendment; and

4.  The right to be free from interference within the zone of
privacy, as protected by the Fourth and Ninth Amendments.

(Dkt. No. 1 at 10.)  Plaintiff contends that defendant James' failure to re-calculate plaintiff's

release date to June 18, 2002, violated plaintiff's Fourth, Ninth, and Fourteenth Amendment

rights because he was over-detained in prison as a result.

Defendants argue that defendant James had no clearly established duty to review a

prisoner's original court records beyond those in the institutional files where the file appears

complete and the sentence is appropriately re-calculated under state law.  Defendants also

contend that James had no duty to contact other institutions or the BOP to inform them of CDCR

inmates' updated release dates.  Defendants argue defendant James was not required to

independently review plaintiff's prison file to ensure the accuracy of his release date.

In connection with the May 23, 2008 order, defendant James contends she was not

required to revise plaintiff's release date because the Contra Costa conviction, which was longer

than the Santa Clara conviction, now controlled, and thus she properly did not change plaintiff's

release date.  Defendant James argues that because she properly refused to change plaintiff's

release date and properly informed the BOP that plaintiff's release date was July 28, 2006, she

did not cause plaintiff's over-incarceration.

Plaintiff counters that defendant James acted under color of state law and

extended plaintiff's period of incarceration by failing to properly calculate plaintiff's release date,

in violation of plaintiff's Fourth and Fourteenth Amendment rights.  (Dkt. No. 65 at 10.)

Plaintiff contends that defendant James' act in refusing to change plaintiff's release date to June

18, 2002, as provided by the May 23, 2008 order, is similar to the prison records officers in

Haygood v. Younger, who chose to calculate the prisoner's sentence in a manner later found by

the court to be erroneous.  Id., 769 F.2d 1350, 1354 (9th Cir. 1985.)  "When an official with the

authority to rectify an erroneous practice receives notice of the wrongful practices and its harmful

1   consequences, due process requires the state to provide a hearing before further denial of liberty

2   can be said to be free from § 1983 liability." Id. at 1359.  Thus, plaintiff argues defendant James

3   violated plaintiff's due process rights.

4           Plaintiff also argues that by the time defendant James reviewed plaintiff's file

5   there was a history of administrative complaints regarding his claim that his sentence was

6   improperly calculated, and two court orders correcting the erroneous calculation.  (Dkt. No. 65 at

7   11.)  Plaintiff contends that by the time the BOP inquired of defendant James concerning

8   plaintiff's release date, defendant James "responded as if the court had not issued orders and the

9   abstract of judgment had not been revised."  (Id.)  Plaintiff argues that defendant James had a

10  duty to comply with the May 23, 2008 order, and in light of that order, there was no need to

11  review prison or court files.  Defendant James' reliance on the computer database to provide the

12  August 2006 release date was misguided; if defendant James properly recorded plaintiff's release

13  date pursuant to the May 23, 2008 order, the database would have reflected the June 18, 2002

14  release date rather than the incorrect 2006 release date.

15          In reply, defendants contend that defendant James was not involved in the

16  CDCR's response to the 2003 order, that the CDCR attempted to transfer plaintiff to federal

17  custody after the 2003 order, but the BOP refused to accept custody of plaintiff because he had

18  not yet completed service of his state prison terms; and that when defendant James received the

19  May 23, 2008 order, she properly updated plaintiff's case records, including not changing

20  plaintiff's release date because the term on his Contra County case controlled.  (Dkt. No. 75 at 3.)

21          i. Legal Standards

22          The due process clause of the Fourteenth Amendment protects individuals from

23  unlawful state deprivation.  The Ninth Circuit has found that over detention can violate a

24  prisoner's civil rights:

25          A prisoner's petition for damages for excessive custody can be a
            legitimate § 1983 claim.  A court's first task is to determine
26          whether Parratt (random act) or Logan (official practice and

> procedure) controls.  If the wrongful taking of liberty results from
> either affirmatively enacted or de facto policies, practices or
> customs, the court must determine when the responsible state
> officers received notice of a claim that a wrong was being done.
> When an official with the authority to rectify an erroneous practice
> receives notice of the wrongful practice and its harmful
> consequences, due process requires the state to provide a hearing
> before a further denial of liberty can be said to be free from § 1983
> liability.

Haygood, 769 F.2d at 1359, citing Parratt v. Taylor, 451 U.S. 527 (1981),[12] and Logan v.

Zimmerman Brush Co., 455 U.S. 422 (1982).  In Parratt, the court found that the random and

unauthorized deprivation of property by state prison officials cannot be prevented by due process

hearings, but a remedial hearing after the injury can provide due process in a limited number of

cases.  Id.  On the other hand,

> where the injury is the product of the operation of state law,
> regulation, or institutionalized practice, it is neither random nor
> unauthorized, but wholly predictable, authorized, and within the
> power of the state to control.  In such cases, the state may not take
> away the protected interest without a hearing in advance of the
> injury.

Haygood, at 1357, citing Logan, 455 U.S. at 436 (state destroyed the plaintiff's property interest

in employment by failing to timely hold a pre-deprivation hearing, resulting in a violation of due

process).  Based on the facts of the instant case, this court finds that Logan and Haygood control.

> The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes
> to be subjected, any citizen of the United States . . . to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution . . . shall be liable to the party injured in an action at
> law, suit in equity, or other proper proceeding for redress.

---

[12]   Daniels v. Williams, 474 U.S. 327 (1986), overruled Parratt.  In Daniels, the prisoner sought damages after slipping on a pillow negligently left on a stairway by a correctional deputy in a city jail.  Id.  The Supreme Court held that "[w]here a government official's act causing injury to life, liberty, or property is merely negligent, 'no procedure for compensation is constitutionally required.'"  Id., at 333, citing Parratt, 451 U.S. at 548 (Powell, J., concurring in result).  Here, defendants do not claim that defendant James negligently failed to change plaintiff's release date, and plaintiff adduced evidence that James' failure to change plaintiff's release date was intentional, based on practices in the Case Records Department.

42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

Monell v. Department of Social Servs., 436 U.S. 658, 692 (1978) ("Congress did not intend

§ 1983 liability to attach where . . . causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976)

(no affirmative link between the incidents of police misconduct and the adoption of any plan or

policy demonstrating their authorization or approval of such misconduct).  "A person 'subjects'

another to the deprivation of a constitutional right, within the meaning of  § 1983, if he does an

affirmative act, participates in another's affirmative acts *or omits to perform an act which he is*

*legally required to do* that causes the deprivation of which complaint is made."  Johnson v.

Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (emphasis added)

Moreover, under certain circumstances, prison officials have a duty to investigate

a claim that a prisoner's sentence has been miscalculated.  Haygood, 769 F.2d at 1355 (judgment

against prison officials was proper because "after being put on notice, [the prison officials]

simply refused to investigate a computational error."); Alexander v. Perrill, 916 F.2d 1392 (9th

Cir. 1990) (warden and administrative systems manager had clearly established duty to

investigate prisoner's claims concerning foreign jail credits and miscalculation of sentence.)

ii.  Analysis

Plaintiff alleges that defendant James deprived him of liberty by wrongfully

keeping him in state custody from June 18, 2002, to July 28, 2006.  Although the Santa Clara

County Superior Court modified plaintiff's conviction and sentence, and confirmed that plaintiff

had served all California state prison sentences as of June 18, 2002, it is undisputed that

defendant James did not change plaintiff's release date.  Thus, it is a jury question whether the

continued detention deprived plaintiff of his rightful liberty, because plaintiff adduced evidence

that the BOP calculated plaintiff's release from federal custody based on the incorrectly recorded,

and subsequently incorrectly confirmed, state release date.  McNeil v. Director, Patuxent

Institution, 407 U.S. 245, 246 (1972); Haygood, 769 F.2d at 1354.  Here, as in Haygood, the

1    denial of due process occurred when defendant James, through interpretations of the regulations

2    for setting release dates, without affording plaintiff an opportunity to be heard, chose to extend

3    plaintiff's custodial period by failing to adjust plaintiff's release date to June 18, 2002, as

4    provided by the May 23, 2008 order of the Santa Clara County Superior Court.

5            It is undisputed that defendant James acted under color of state law.  Plaintiff

6    adduced evidence that defendant James was a prison official with the authority to rectify

7    plaintiff's release date.  It is undisputed that defendant James received the May 23, 2008 abstract

8    instructing her that a court found plaintiff's "sentence deemed served on 6/18/02."  The May 23,

9    2008 order supporting the abstract of judgment makes clear that the state court found that

10   plaintiff "completed service of all California prison terms as of June 18, 2002," and revised

11   plaintiff's criminal conviction based on a violation of plaintiff's due process rights.  Viewed in

12   the light most favorable to plaintiff, this evidence demonstrates that defendant James was

13   deliberately indifferent to plaintiff's right to be free from state custody as of June 18, 2002, as

14   ordered by the Santa Clara County Superior Court.

15           Defendant James failed to provide plaintiff with notice of her decision not to

16   change plaintiff's release date pursuant to the court order.  Defendant James failed to provide

17   plaintiff a hearing prior to depriving plaintiff of the remedy he sought, and received, from a court

18   of law.  Defendant James also failed to notify the court that she was not going to change

19   plaintiff's release date, in contravention of the court order, and failed to challenge the court order

20   prior to disobeying the order.  Plaintiff also adduced evidence that case records staff member

21   Paula Sholberg wrote an information about plaintiff's release date and the May 23, 2008 court

22   order, stating that Santa Clara County was "insisting that CDCR use 6-18-02 as the release date

23   and to adjust things accordingly."  (Dkt. No. 70 at 27.)  Ms. Sholberg's note raises an inference

24   that defendant James knew the court intended for plaintiff's release date to be changed to June

25   18, 2002, yet knowingly failed to change plaintiff's release date as provided by the May 23, 2008

26   order, and the disobedience of the court order was ratified by her superiors, without first

                                          23

providing plaintiff an opportunity to be heard.  Thus, plaintiff adduced evidence demonstrating

that defendant James violated plaintiff's due process rights under the Fourteenth Amendment,

and defendant James is not entitled to summary judgment on plaintiff's Fourteenth Amendment

claims arising from the May 23, 2008 court order.

Defendant James contends she properly re-calculated plaintiff's release date based

on the Contra Costa County conviction.  However, plaintiff adduced evidence demonstrating that

the release date initially calculated on the Contra Costa County conviction was June 18, 2002,

and was only changed to July 28, 2006 after the Santa Clara conviction.  (Dkt. No. 70 at 6.)

Even after the federal conviction, plaintiff's release date remained June 18, 2002.  (Dkt. No. 71 at

35.)  Moreover, prison officials later re-calculated plaintiff's release date as May 15, 2003.  Thus,

there are material disputes of fact as to whether defendant James properly re-calculated plaintiff's

release date, or should have recalculated the release date rather than abide by the terms of the

plea agreement, and defendant James is not entitled to summary judgment on this claim.

Moreover, plaintiff adduced evidence demonstrating that defendant James

provided the BOP with the incorrect release date in September or early October 2008, and that

the BOP, despite having the May 23, 2008 order, retained the 2006 incorrect release date based

on defendant James' confirmation that the 2006, rather than the 2002, release date was correct.

Plaintiff also adduced evidence that on December 1, 2008, the CDCR notified the BOP that

plaintiff's release date was revised to May 15, 2003.  This evidence raises an inference that

defendant James should have informed the BOP that on May 23, 2008, the Santa Clara County

Superior Court order confirmed that plaintiff had served all of his California state prison

sentences as of June 18, 2002, and that the 2002 release date was correct.  Thus, defendant James

is not entitled to summary judgment on plaintiff's allegations subsequent to the May 23, 2008

order.

However, defendant James' potential liability is limited to her actions from the

date she received the May 23, 2008 abstract or court order; plaintiff adduced no evidence that

24

1  defendant James received, or received notice of, the 2003 or 2007 court orders.  There is no

2  evidence that the 2003 or 2007 orders were served on Case Records or on defendant James.

3  Moreover, plaintiff adduced no evidence that defendant James was involved in investigating or

4  preparing the December 21, 2007 response to the Santa Clara County Superior Court.  Because

5  plaintiff failed to demonstrate a link or connection between defendant James and plaintiff's

6  allegations arising prior to May 23, 2008, defendant James is entitled to summary judgment on

7  plaintiff's constitutional claims arising prior to the May 23, 2008 order.

8          Finally, neither party expressly addressed plaintiff's Fourth and Ninth

9  Amendment or equal protection claims.  (Dkt. No. 1 at 10, ¶ 30(a), (c) & (d).)  Defendants

10  included reference to the Fourth and Ninth Amendments in their motion subheading, but

11  generally argue that plaintiff failed to demonstrate a link or connection between defendant James

12  and plaintiff's over-incarceration, and that defendant James did not cause plaintiff's over-

13  incarceration.  However, as set forth above, plaintiff adduced evidence demonstrating defendant

14  James' involvement, and supporting his allegations that defendant James violated his civil rights.

15  Accordingly, plaintiff's Fourth and Ninth Amendment claims and equal protection claims also

16  survive summary judgment, as they were not properly placed at issue in the instant motion.

17  VII.  Qualified Immunity

18          Alternatively, defendant James seeks qualified immunity on plaintiff's

19  constitutional claims.  Defendants contend that because defendant James changed plaintiff's

20  records to reflect the May 23, 2008 court order, and then recalculated plaintiff's release date,

21  pursuant to her job duties, reviewing case law and the California Penal Code, she should be

22  granted qualified immunity because a reasonable person in her position could have believed her

23  conduct was legal.

24          A defendant is entitled to qualified immunity if his conduct "does not violate

25  clearly established statutory or constitutional rights of which a reasonable person would have

26  known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The qualified immunity analysis

originally involved a two-step inquiry: (1) whether the facts alleged or shown by the plaintiff establish a constitutional violation and (2) whether the right at issue was clearly established at the time. Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223, 236 (2009). The Supreme Court has since held that courts have discretion in deciding which prong to address first. Pearson, 555 U.S. at 236. "The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." Id. at 244.

> For a constitutional right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). It is not sufficient to allege the violation of "abstract rights." Id. at 639, 107 S.Ct. 3034. Rather, the right the officials are alleged to have violated must be "'clearly established' in a more particularized, and hence more relevant, sense." Id. at 640, 107 S.Ct. 3034; see also Cousins v. Lockyer, 568 F.3d 1063, 1070 (9th Cir.2009) (concluding that while the plaintiff had the right to be free from wrongful incarceration, the relevant qualified immunity inquiry was whether the plaintiff had provided any evidence that a reasonable official in the defendant's position would have known that by failing to monitor state appellate court decisions for changes to the law, he would be violating the plaintiff's constitutional rights).

Alston v. Read, 663 F.3d 1094, 1098-99 (9th Cir. 2011). In Alexander, the Ninth Circuit stated that:

> We have previously held that under § 1983 the qualified immunity defense is inapplicable whenever an official "does an affirmative act, participates in another's affirmative acts, or *omits to perform an act which he is legally required to do* that causes the deprivation [of an individual's rights]." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir.1978) (emphasis added). Under § 1983 when an official fails to take an action that he has a clearly established duty to take and that failure is a foreseeable contributing factor to the violation of a plaintiff's constitutional rights, the defense is similarly unavailable. Id.

Alexander, 916 F.2d at 1396.

////

Here, plaintiff adduced evidence that under CDCR policies and regulations, defendant James was required to update inmates' records as required by court orders.  In resolving these issues, the court must view the evidence in the light most favorable to plaintiff, and resolve all material factual disputes in favor of plaintiff.  Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).  As set forth above, there remain material factual disputes as to whether defendant James properly retained the 2006 release date in the face of the May 23, 2008 order stating that plaintiff completed service of all California prison terms as of June 18, 2002.  However, construing the facts in the light most favorable to plaintiff, Saucier, 533 U.S. at 201, the court must assume that defendant James knowingly retained the 2006 release date despite the court order providing otherwise, and despite the fact that plaintiff's release date previously calculated on the Contra Costa conviction was June 18, 2002, not the 2006 date that was revised following plaintiff's Santa Clara County conviction.  So construed, plaintiff's allegations preclude summary judgment on defendant James' qualified immunity defense.  See Alexander, 916 F.2d at 1398; Haygood, 769 F.2d at 1355.

Because the plain language of the May 23, 2008 court order makes clear that the state court sought information from the CDCR, and found that plaintiff "completed service of all imposed California State prison terms on June 18, 2002, and thereafter was no longer serving any prison sentence for any California State offense," no additional recalculating or investigation was required.  In the face of this May 23, 2008 order, a reasonable case records analyst would have known that failing to adjust plaintiff's release date in accordance with the court order would violate plaintiff's constitutional rights.

Thus, defendant James' reliance on Alston, 663 F.3d at 1094, is unavailing.  In Alston, the court stated that "neither Haygood nor Alexander establishes a duty to obtain a prisoner's court file where the institutional file appears complete, the sentence was appropriately recalculated under state law, and the prisoner has presented no evidence to the contrary."  Alston, ////

663 F.3d at 1099.  Here, defendant James was presented with a plainly worded, certified court order; arguably no further investigation, review, or recalculation was required.

VIII.  <u>State Law Claims</u>

Plaintiff claims that defendants falsely imprisoned plaintiff; defendant James intentionally caused plaintiff to suffer emotional distress; defendants were negligent and negligently caused plaintiff to suffer emotional distress; and defendants CDCR and Cate negligently hired, retained, supervised, and disciplined their subordinates.  Defendants move to dismiss plaintiff's:  (a) false imprisonment claims against defendants CDCR, Brown, Cate, and James; (b) intentional infliction of emotional distress claim against defendant James; (c) negligence and negligent infliction of emotional distress claims against defendant James; and (d) negligence, negligent infliction of emotional distress, and negligent hiring claims against defendant Cate.[13]  The court first addresses plaintiff's false imprisonment claims, then his remaining state law claims as to defendant James, and then addresses plaintiff's remaining state law claims as to defendant Cate.

A.  <u>False Imprisonment</u>

Plaintiff contends that defendants CDCR, Brown, Cate, and James falsely imprisoned plaintiff in violation of state law.

Defendants move to dismiss plaintiff's false imprisonment claims.  Defendants argue that if the constraint is made under color of state law, there is no false imprisonment even if the constraint is wrongful.  <u>Collins v. City & County of San Francisco</u>, 50 Cal. App. 3d 671, 677 (1975); <u>see</u> <u>Jackson v. City of San Diego</u>, 121 Cal. App. 3d 579, 585 (1981).  Defendants contend that plaintiff was confined in the CDCR under proper authority from 1998 through 2006,

////

_____

[13]  As noted above, plaintiff conceded his state law claims as to defendant Brown as set forth in defendants' Section VI, which addressed all state law claims except the false imprisonment claim.

28

1   and plaintiff did not contest the propriety of the release date until 2007, or obtain a court order

2   clarifying his release date, until long after he was released from state custody on July 28, 2006.

3           Plaintiff counters that a claim for false imprisonment grounded upon prolonged

4   detention may arise if a person is "deprived of his liberty after his jail term ends." Sullivan v.

5   County of Los Angeles, 12 Cal.3d 710, 717 (1974).  In Sullivan, the court held that the county

6   was not immune from liability for false imprisonment when it knew or should have known that

7   the plaintiff was entitled to be released from jail after all charges against him were dismissed. Id.

8   12 Cal.3d at 717-18.  The court noted that the county's failure to perform its mandatory duty to

9   release plaintiff under California Penal Code § 1384 ("If the judge or magistrate directs the

10  action to be dismissed, the defendant must, if in custody, be discharged therefrom. . . .") rendered

11  it directly liable for damages.  Sullivan, at 715.

12          i.  Legal Standards

13          The tort of false imprisonment is the nonconsensual, intentional confinement of a

14  person, without lawful privilege, for an appreciable length of time, however short.  See City of

15  Newport Beach v. Sasse, 9 Cal. App. 3d 803, 810 (1970).  "The tort of false imprisonment is

16  defined as the unlawful violation of the personal liberty of another.  The confinement must be

17  without lawful privilege."  Asgari v. City of Los Angeles, 15 Cal.4th 744, 757 (1997).

18          Under California common law the jailer has long been held liable
            for false imprisonment if he knew or should have known of the
19          illegality of the imprisonment.  In Abbott v. Cooper (1933) 218
            Cal. 425, 429-430, 23 P.2d 1027, this court held a jailer liable for
20          damages for false imprisonment because he 'knew or should have
            known' from statements of the arresting officers of the illegality of
21          the arrest.  (See also Smith v. Madruga (1961) 193 Cal.App.2d
            543, 546, 14 Cal.Rptr. 389.)  And more recently in Shakespeare v.
22          City of Pasadena (1964) 230 Cal.App.2d 375, 386, 40 Cal.Rptr.
            863, the Court of Appeal found a city derivatively liable for false
23          imprisonment based upon the acts of city employees in holding the
            plaintiff in jail after payment of bail for his release.

24

25  Sullivan, 12 Cal. 3d at 717-18.

26  ////

1  |  If the sheriff 'knew or should have known' that plaintiff's
2  |  incarceration was unlawful because all charges against him had
   |  been dismissed, then the sheriff is liable for false imprisonment.
3  |  The test requires either that the sheriff have actual knowledge that
   |  the imprisonment of the plaintiff is unlawful or alternatively that he
4  |  have some notice sufficient to put him, as a reasonable man, under
   |  a duty to investigate the validity of the incarceration. (Cf. Rest.2d
5  |  Torts, § 45, com. b.)  The slight burden which this duty imposes
   |  upon the sheriff must be viewed in light of plaintiff's overriding
6  |  interest in avoiding unjustified incarceration. . . .  'The law does
   |  not hold the value of a man's freedom in such low regard.' ([Whirl
7  |  v. Kern (5th Cir. 1969) 407 F.2d 781, 792, <u>cert. den.</u> 396 U.S. 901,
   |  90 S.Ct. 210].)  It is slight solace for the deprivation of one's liberty
8  |  to be told that the jailer carelessly failed to follow his instructions
   |  to unlock the jailhouse door.

9   Sullivan, 12 Cal. 3d at 719. "Penal Code section 1384 [states]:  "If the court directs the action to

10  be dismissed, the defendant must, if in custody, be discharged therefrom." Sullivan, at 715.

11  California Government Code Section 815.6 provides:

12  |  Where a public entity is under a mandatory duty imposed by an
    |  enactment that is designed to protect against the risk of a particular
13  |  kind of injury, the public entity is liable for an injury of that kind
    |  proximately caused by its failure to discharge the duty unless the
14  |  public entity establishes that it exercised reasonable diligence to
    |  discharge the duty.

15  Id.

16          ii.  Analysis

17          First, plaintiff presented evidence of his efforts to inform prison officials of the

18  incorrectly calculated release date.  (Dkt. No. 71.)  On October 4, 2000, plaintiff filed an inmate

19  appeal claiming that his release date was incorrectly calculated as his sentences were concurrent.

20  (Dkt. No. 72 at 21.)  Plaintiff asked that his time be re-calculated.  Plaintiff also noted that his

21  legal status summary showed as "discrepant," which plaintiff alleged meant that someone was

22  mistaken, and stated that the prison did not have "the right to overrule any judges's sentence."

23  (Id.)  On October 10, 2000, plaintiff's appeal regarding his release date was returned, claiming

24  that plaintiff had not attempted to resolve the problem on an informal level or was trying to

25  circumvent the appeal process.  (Dkt. No. 72 at 20.)  On December 4, 2000, plaintiff received an

26  informal response to his October 4, 2000 appeal, which stated:

1    The case that keeps you in custody the longest is your controlling
     case.  Your case that is concurrent keeps you in custody the
2    longest.  Your term starts on this case , when you returned to CDC
     custody on 7-26-00.  This is a 15% case because of 12022.5, which
3    is violent.  Your release date of 6-26-2006 is correct.
     (GRANTED.)
4

5    /s/ P. Clark.  (Dkt. No. 72 at 21.)

6           On January 9, 2002, plaintiff filed another appeal claiming his release date is

7    incorrect.  (Dkt. No. 72 at 19.)  Plaintiff claimed that the total term set forth in the abstract of

8    judgment was "3 years C.D.C.," and that therefore the other 4 years must be "with the federal

9    time." (Dkt. No. 72 at 19.)  However, on January 15, 2002, R. Wilson, Appeals Coordinator,

10   screened out plaintiff's appeal concerning his release date, claiming it was untimely because

11   plaintiff did not continue his initial appeal which received an informal response on December 4,

12   2000. (Dkt. No. 72 at 18.)  Plaintiff's administrative appeals arguably put prison officials on

13   notice that plaintiff disputed the calculation of his prison sentence, and that prison officials

14   should further investigate.  At trial, defendants may argue that plaintiff failed to provide

15   sufficient facts suggesting plaintiff's claim was legitimate, for example, that plaintiff's last plea

16   agreement specified that plaintiff was to serve no additional prison time.  Thus, a material

17   dispute of fact exists as to whether plaintiff's administrative appeals put defendant CDCR on

18   notice of the alleged miscalculation of plaintiff's release date.  Defendant CDCR is not entitled to

19   summary judgment on this claim.

20          Second, prison officials were again put on notice of a possible discrepancy in

21   plaintiff's release date when the Santa Clara County Superior Court granted plaintiff's habeas

22   petition, and ordered plaintiff released to federal custody to begin serving his federal sentence.

23   The 2003 order granting plaintiff's habeas petition was directed to both the CDCR and the

24   Warden,[14] and was twice mailed to the Warden (dkt. no. 70 at 20, 21).  Viewing the evidence in

25

26          [14]  The Warden is not named as a defendant herein.

31

the light most favorable to plaintiff, this undisputed fact put both the Warden and the CDCR on

notice that plaintiff was to be delivered to the custody of the Attorney General of the United

States or his authorized representative "for the purpose of serving a sentence imposed by the

United States District Court."  (Dkt. No. 58-3 at 33.)  Defendants adduced no evidence

demonstrating that defendants appealed or communicated with the court as to the 2003 order.

Thus, defendant CDCR is not entitled to summary judgment on this claim.

        At trial, defendants may contend that the court's citation to Harris and Stoliker in

2003 meant that plaintiff was eligible to serve his state time in federal custody, as all of

plaintiff's sentences were concurrent, and that the 2003 order did not clearly state that plaintiff

had completed service of all of his state sentences.  Indeed, the Ninth Circuit has explained that

under Stoliker, "California law bestows upon [plaintiff] . . . the right to be tendered to [the BOP]

for transfer."  Isreal v. Marshall, 125 F.3d 837, 839 (9th Cir. 1997) (California law could not

require an independent and sovereign [Missouri] to accept custody of a prisoner).[15]  Defendants

may also argue that prison officials reasonably relied on the 2002 letter from the BOP, and faxed

to prison officials on May 23, 2003, refusing federal custody of plaintiff because he allegedly had

time remaining to serve on his state sentence under Stoliker.

        However, plaintiff adduced evidence to the contrary.  The petition for writ of

habeas corpus underlying the order granting habeas relief made clear that plaintiff asserted his

sentence was miscalculated in violation of a plea agreement in which he bargained for the

promise that he would serve no additional prison time.  Reading the habeas petition together with

the 2003 order, plaintiff raised an inference that the court intended plaintiff to begin serving his

federal sentence, suggesting that the state sentence was completed as plaintiff argued in the

habeas petition.  Moreover, to the extent that defendant CDCR believed the court order to be in

---

[15]  However, the Ninth Circuit reserved the question of whether a wrongful refusal to
accept a transfer would violate the laws of the receiving jurisdiction or violate the inmate's
constitutional rights.  Id. at 839 n.1 (declining to decide issue not properly raised).

1   error, or could not follow the court order requiring the CDCR to release plaintiff into federal

2   custody, plaintiff adduced evidence that defendant CDCR had a duty to follow the court order, or

3   inform the court of any alleged discrepancy, or challenge the court order.

4           Karen Elliott, Correctional Case Records Administrator, was identified by the

5   CDCR as the person most knowledgeable on a variety of subjects.  (Elliott Depo. at 19.)  In her

6   deposition, Ms. Elliott testified that the CDCR is responsible for maintaining inmates' central

7   files, and the central file should include copies of court orders.  (Id. at 32.)  She testified that the

8   2003 court order was in plaintiff's central file.  (Id. at 64.)  Although the 2003 court order was

9   not reflected on plaintiff's chronological history, Ms. Elliott testified that the receipt of every

10  document is not always recorded on the chronological history.  (Id. at 65.)  Ms. Elliott did not see

11  any record within plaintiff's chronological history that any action was taken in response to the

12  2003 court order.  (Id.)  After review of plaintiff's central file, Ms. Elliott testified that she did

13  not see that the central file reflected any action was taken in response to the 2003 order; she did

14  not see that plaintiff was delivered to the Attorney General.  (Id. at 70-71.)  Ms. Elliott testified

15  that in a hypothetical case with a short time frame, Case Records Analysts will call the court and

16  talk to the clerk "because there's not enough time for us to give them to look at the case within

17  [their] time frames."  (Id. at 57.)  If there is sufficient time, the analysts will notify the court in

18  writing as to alleged discrepancies.  (Id.)  Ms. Elliott testified that there was no indication in

19  plaintiff's central file that plaintiff was delivered to the Attorney General.  (Id. at 70.)  Plaintiff

20  provided a declaration stating he was "unaware of any attempt on the part of the CDCR to

21  comply with the May 15, 2003 order."  (Dkt. No. 71 at 2.)  Thus, there are material disputes of

22  fact as to whether defendant CDCR falsely imprisoned plaintiff by failing to release plaintiff to

23  federal custody pursuant to the 2003 order.

24          Third, there is a material dispute of fact as to whether defendant CDCR took no

25  action in response to the 2003 court order.  Defendants claim the BOP refused to accept custody

26  of plaintiff, relying on the 2003 entries on the Detainer Summary and the 2002 letter faxed to

prison officials on May 27, 2003.  However, plaintiff contends that the Detainer Summary shows

that an unidentified prison official followed-up on plaintiff's request for transfer to federal

custody under Stoliker, and Ms. Beakey from the BOP re-supplied the 2002 denial.

The Detainer Summary does not mention a court order or the 2003 court order,

and the BOP letter faxed to prison officials on May 27, 2003, was written in 2002, prior to the

May 2003 court order.  Defendants did not provide a declaration from Ms. Beakey or Liz

Samora, to whom the May 27, 2003 fax was directed, to confirm that either was acting in

response to the 2003 court order.  Defendants did not provide a declaration from the BOP or

other federal official confirming their alleged refusal to accept custody of plaintiff in 2003.

Thus, there is a material dispute of fact as to whether the entries on the Detainer Summary, and

the subsequent faxing of the 2002 letter, confirm that the CDCR sought plaintiff's release to

federal custody in 2003.  Plaintiff adduced evidence that the 2003 court order was in plaintiff's

central file.  Thus, defendant CDCR is not entitled to summary judgment on the false

imprisonment claim in connection with the 2003 order.

Fourth, on December 21, 2007, in response to the order to show cause, defendant

CDCR responded with "taking no position," claiming plaintiff was no longer in state custody but

was in the custody of the BOP.  The CDCR claimed, without reference to evidence, that the

CDCR attempted to comply with the 2003 order, but that the federal government refused to take

custody of plaintiff.  Because the record evidence surrounding the alleged attempt to transfer

plaintiff to federal custody in 2003 is in dispute, defendant CDCR is not entitled to summary

judgment on this claim.  Moreover, plaintiff adduced evidence that prison officials were aware

that the BOP was calculating plaintiff's release from federal custody based on plaintiff's official

release date from state custody.  Indeed, on December 1, 2008, CDCR advised the BOP that

plaintiff's release date was revised again, this time to May 15, 2003.  Thus, the statement in the

December 21, 2007 letter that the calculation of plaintiff's release rested solely with the BOP is

in dispute.  The 2007 order gave rise to a duty to investigate both the grounds on which the 2007

1   order was issued, but also whether plaintiff's release date was properly calculated.  Thus, there

2   are material disputes of fact as to whether defendant CDCR is responsible for the alleged false

3   imprisonment of plaintiff from December 5, 2007.

4          Fifth, as to defendants Brown, Cate, or James, plaintiff adduced no evidence that

5   these defendants received notice of the 2003 order at the time it issued, or became aware of the

6   2003 order prior to the issuance of the order to show cause on December 5, 2007.  Thus,

7   defendants Brown, Cate and James are entitled to summary judgment on plaintiff's false

8   imprisonment claim for the time frame 2003 to 2007.  Also, plaintiff failed to adduce any

9   evidence demonstrating that the Governor of California in 2007,[16] or defendants Cate and James,

10  had actual or constructive knowledge of the 2007 court order; thus, defendants Brown, Cate, and

11  James are entitled to summary judgment on plaintiff's false imprisonment claim as to the 2007

12  court order.

13         Sixth, plaintiff failed to adduce evidence demonstrating that defendant Cate or the

14  Governor of California in 2008 had notice of the 2008 order, or that defendant Cate or the

15  Governor had actual or constructive knowledge of plaintiff's administrative appeals, the 2003

16  order, or the 2007 order.  Defendants provided the declaration of Karen Elliott, Correctional Case

17  Records Administrator, who declared that defendants Cate and Brown were not involved in the

18  procedures that CDCR follows for updating inmates' prison files and recalculating their release

19  dates, and that her review of plaintiff's central file reflected no such involvement in plaintiff's

20  case.  (Dkt. No. 58-3 at 62-63.)

21         Plaintiff cites legal authority for the proposition that the jailer, and derivatively the

22  public entity which employs the jailer, may be liable on a theory of false imprisonment where

23
          [16]  The December 21, 2007 letter was written on behalf of Brown in his role as Attorney
24  General of the State of California, not as Governor.  Brown and Deputy Attorney General
    Binsacca were responding to the Santa Clara County Superior Court on behalf of CDCR in their
25  roles as counsel for the CDCR.  (Dkt. No. 72 at 25.)  On March 28, 2011, defendant Brown was
    substituted into this action for defendant Schwarzenegger, as Governor.  Plaintiff adduced no
26  evidence that in 2007, the Governor had actual or constructive notice of the 2007 order.

facts demonstrate defendants knew, or should have known, an inmate is over-detained in prison. (Dkt. No. 65 at 13.)  Thus, plaintiff adduced evidence demonstrating that defendants James and the CDCR may be liable based on plaintiff's false imprisonment claim.  However, plaintiff provided no legal authority for the liability of defendants Cate or Brown on plaintiff's false imprisonment claim.  (Dkt. No. 65 at 13-16.)  Indeed, in their opposition, plaintiff referred to "defendants" generically, and argued specifically only as to defendants CDCR and James.  (Id.) Because plaintiff alleged no facts and adduced no evidence demonstrating that defendants Cate or Brown knew, or should have known, that plaintiff was over-detained in prison without lawful authority, defendants Cate and Brown are entitled to summary judgment on plaintiff's false imprisonment claims.

Seventh, there is a material issue of fact as to whether defendant James' failure to change plaintiff's release date to June 18, 2002, as provided by the May 23, 2008 order, constituted false imprisonment under California law.  Arguably, the state court's order that plaintiff "completed service of all California prison terms as of June 18, 2002" was sufficient, on its face, to alert defendant James that the court required plaintiff's release date to be changed to June 18, 2002.  This fact is supported by the November 2008 information authored by Paula Sholberg who noted that Santa Clara County was "insisting that CDCR use 6-18-02 as the release date and to adjust things accordingly."  (Dkt. No. 70 at 27.)  This note raises an inference that defendant James and the CDCR intentionally failed to adjust plaintiff's release date pursuant to the court order.

Here, a case from the Fifth Circuit is instructive:

> The responsibility for a failure of communication between the courts and the jailhouse cannot justifiably be placed on the head of a man immured in a lockup when the action of the court has become a matter of public record.  Ignorance and alibis by a jailer should not vitiate the rights of a man entitled to his freedom.  A jailer, unlike a policeman, acts at his leisure.  He is not subject to the stresses and split second decisions of an arresting officer, and his acts in discharging a prisoner are purely ministerial.  Moreover, unlike his prisoner, the jailer has the means, the freedom, and the

duty to make necessary inquiries. While not a surety for the legal correctness of a prisoner's commitment, Ravenscroft v. Casey, 2 Cir. 1944, 139 F.2d 776, cert. denied, 323 U.S. 745, 65 S.Ct. 63, 89 L.Ed. 596; DeWitt v. Thompson, 1942, 192 Miss. 615, 7 So.2d 529, he is most certainly under an obligation, often statutory, [footnote omitted] to carry out the functions of his office. Those functions include not only the duty to protect a prisoner, but also the duty to effect his timely release.

The central issue in this case is one of privilege, not of intent; one of law, not of fact. The tort of false imprisonment is an intentional tort. Restatement of Torts, Second, 44. It is committed when a man intentionally deprives another of his liberty without the other's consent and without adequate legal justification. Roberts v. Hecht Co., D.Md.1968,280 F.Supp. 639, 640; Browning v. Pay-Less Self Service Shoes, Inc., Tex.Civ.App.1963, 373 S.W.2d 71 (no writ); 32 Am.Jur.2d, False Imprisonment § 1 (1968). Failure to know of a court proceeding terminating all charges against one held in custody is not, as a matter of law, adequate legal justification for an unauthorized restraint. Were the law otherwise, Whirl's nine months could easily be nine years, and those nine years, ninety-nine years, and still as a matter of law no redress would follow. The law does not hold the value of a man's freedom in such low regard.

Whirl v. Kern, 407 F.2d 781, 792 (5th Cir. 1969), cert. denied, 396 U.S. 901.

Although plaintiff's charges were not dismissed, plaintiff's myriad efforts to correct his release date fell on deaf ears. Despite the Santa Clara County Superior Court's May 15, 2003 order directing the CDCR and the Warden to deliver plaintiff to federal custody, plaintiff adduced evidence that no one complied with the order or sought relief from the court order, despite notice to the CDCR and the Warden, and despite the filing of the order in plaintiff's central file. Thus, plaintiff's state court confinement continued without redress, despite plaintiff having sought, and won, habeas corpus relief.

Plaintiff again sought court relief, and was granted specific enforcement of his plea agreement in the Contra Costa case. Yet, when defendant James received the revised abstract of judgment, defendant James determined that the revised judgment did not change plaintiff's release date, allegedly because the 1998 Contra Costa conviction was longer and now controlled. (Dkt. No. 58-3 at 55.) Ms. Elliott explained that credit losses and changes in case

37

1   law would cause the application of the Contra Costa conviction to alter plaintiff's release date

2   from the June 18, 2002 date set forth in the May 23, 2008 order.  (Id. at 96, 102.)

3          However, plaintiff adduced evidence that when plaintiff's release date was

4   initially calculated on the 1998 Contra Costa conviction, it was set at June 18, 2002; after his

5   federal conviction, it remained June 18, 2002; and the release date was not re-calculated to June

6   28, 2006, until entry of plaintiff's subsequent Santa Clara conviction.  (Elliott Depo. at 121.)

7   Moreover, the revised abstract stated that plaintiff's "sentence deemed served on 6/18/02."

8   Plaintiff adduced evidence that the May 23, 2008 order was in plaintiff's central file.  (Elliott

9   Depo. at 75.)  The May 23, 2008 order was certified, bearing the state court judge's signature and

10  the seal of the Great State of California.  (Elliott Depo. at 90.)  Finally, and most importantly, the

11  May 23, 2008 court order supporting the abstract made clear that the state court found plaintiff

12  had served all California prison terms as of June 18, 2002.  Thus, plaintiff adduced evidence

13  demonstrating that defendant James' failure to change plaintiff's release date to June 18, 2002,

14  was without legal justification.

15         In her deposition, Ms. Elliott testified that Case Records was confused by the May

16  23, 2008 order and believed that the Santa Clara County court could not modify or deem the

17  Contra Costa County sentence served as of a particular date.  (Id. at 92.)  The Sholberg

18  information confirmed Ms. Elliott's testimony that "somebody was appealing the current court

19  order."  (Elliott Depo. at 93.)  Ms. Elliott stated, "[s]o we were waiting for a decision to be made

20  about pending appeal of current court order."  (Id. at 93-94.)  However, plaintiff adduced

21  evidence that it was not until February 3, 2009, that the CDCR filed a petition for writ of

22  mandate or prohibition California Department of Corrections v. Superior Court (Ward), No.

23  H033823, requesting that the December 5, 2008 order requiring the CDCR to correct its records

24  to reflect the May 23, 2008 order be vacated.  (Dkt. No. 73 at 4.)  Importantly, the petition was

25  summarily denied on April 1, 2009.

26  ////

The May 23, 2008 order expressly found that plaintiff had served all of his California prison terms as of June 18, 2002, and made clear that the court had gone to extraordinary measures to assure plaintiff received the benefit of his plea bargain.  Indeed, Ms. Elliott testified that she "perceived [the order] as something that was unusual." (Id. at 91.)  The state court found that because plaintiff's due process rights had been violated, the court was taking additional steps to strike the punishment for the weapons enhancement and the application of the credit reduction statute, arguably putting defendants on notice that a failure to change plaintiff's release date as set forth in the May 23, 2008 order, risked violating plaintiff's constitutional rights again.  In particular, the court's reference to the violation of plaintiff's due process rights should have cautioned defendant James, the CDCR, and other prison officials, that a more prudent course of action would be to change plaintiff's release date to June 18, 2002, as provided in the May 23, 2008 order, and seek clarification, or appeal the order, thereafter. Indeed, Ms. Elliott testified that in cases with short time frames, it was possible for Case Records staff to simply call the court for clarification.  Defendant James adduced no evidence that she called or wrote the court to seek clarification of the May 23, 2008 order.

In light of the above, material disputes of fact preclude entry of summary judgment as to defendant James (from May 23, 2008) and the CDCR on plaintiff's false imprisonment claim.

Eighth, defendant James' failure to change plaintiff's release date to June 18, 2002, pursuant to the May 23, 2008 order, was compounded when defendant James provided the BOP with the June 28, 2006 release date rather than the June 18, 2002 release date provided by the May 23, 2008 court order.  If defendant James had properly changed the release date, arguably the correct release date would have been reflected in the computer database, and plaintiff's release from federal custody would not have been further delayed.

For all of the above reasons, defendants' motion for summary judgment on plaintiff's false imprisonment claims is denied as to defendants CDCR and James, and granted as

1    to defendants Cate and Brown.

2                    B.  Remaining State Law Claims as to Defendant James

3                    Because the court finds plaintiff's false imprisonment claim survives as to

4    defendant James, plaintiff's state law claims for the intentional infliction of emotion distress,

5    negligence, and the negligent infliction of emotional distress are derivative of the false

6    imprisonment claims.  Martinez v. City of Los Angeles, 141 F.3d 1373, 1382 (9th Cir. 1998)

7    ("Martinez's claims for intentional and negligent infliction of emotional distress, and his wife's

8    claim for loss of consortium, are derivative of the false arrest and false imprisonment claims.

9    Because the false imprisonment claim grounded on prolonged detention survives summary

10   judgment, these claims survive as well.)  Compare Asgari, 15 Cal. 4th at 744 (reversing, on other

11   grounds, damages for both false imprisonment and intentional infliction of emotional distress).

12   Because defendant James held a position of power that enabled her to deprive plaintiff of his

13   personal liberty, defendant James held a special relationship with plaintiff.  Thus, plaintiff's state

14   law claims as to defendant James are derivative of the false imprisonment claim, and will

15   proceed to trial.

16                    C.  Negligent Hiring; Negligence and Negligent Emotional Distress

17                    Defendants move to dismiss plaintiff's remaining state law claims as to defendant

18   Cate.  Defendants provided a declaration from Karen Elliott, Correctional Case Records

19   Administrator, who declared that defendant Cate was not involved in the procedures that CDCR

20   follows for updating inmates' prison files and recalculating their release dates, and that her

21   review of plaintiff's central file reflected no such involvement in plaintiff's case.  (Dkt. No. 58-3

22   at 62-63.)  The parties filed supplemental briefing on this claim pursuant to this court's June 4,

23   2012 order.

24   ////

25   ////

26   ////

                                                    40

1          In the supplemental opposition, plaintiff argues that defendant Cate failed to

2   perform his duty as Secretary.[17]   Plaintiff contends that Cate is inextricably involved with the

3   procedures and officials who caused plaintiff's over detention based on the following:

4               Commencing July 1, 2005, the supervision, management and
                control of the state prisons, and the responsibility for the care,
5               custody, treatment, training, discipline and employment of persons
                confined therein are vested in the Secretary of the Department of
6               Corrections and Rehabilitation.

7   Cal. Penal Code § 5054.  All CDCR duties are imposed on the Secretary:

8               Commencing July 1, 2005, all powers and duties previously
                granted to and imposed upon the Department of Corrections shall
9               be exercised by the Secretary of the Department of Corrections and
                Rehabilitation, except where those powers and duties are expressly
10              vested by law in the Board of Parole Hearings.

11              Whenever a power is granted to the secretary or a duty is imposed
                upon the secretary, the power may be exercised or the duty
12              performed by a subordinate officer to the secretary or by a person
                authorized pursuant to law by the secretary.
13

14   Cal. Penal Code § 5055.  The CDCR has jurisdiction over the prison in which plaintiff was

15   confined.  Cal. Penal Code § 5003.

16          Plaintiff argues that the rules governing prison administration are promulgated by

17   the Secretary, citing Cal. Penal Code § 5058.  These rules are codified as regulations per Cal.

18   Govt. Code §§ 11340 et seq., and codified in Title 15.  The applicable regulations include the

19   calculation of custody time (CCR §§ 3042 et seq), the intake and release of inmates (CCR §§ 3-

20   85 et seq), and the placement and classification of inmates (CCR §§ 3375 et seq.), including the

21   processes for transferring inmates to federal custody (CCR § 3379).  Plaintiff argues that the

22   Secretary must approve the operational plans and procedures which implement the regulations

23   (CCR § 3380(c).  Specifically, the regulations should provide comprehensive guidance regarding

24

25          [17]  The Office of the "Director of Corrections" was abolished in favor of the "Secretary of
     the CDCR" as of July 1, 2005.  All references in state law to the Director of Corrections refer
26   now to the Secretary.  Cal. Penal Code § 5050.

1    the hiring, training, and conduct of CDCR employees per CCR §§ 3390 et seq.

2              Whether or not defendant Cate had no involvement here, plaintiff argues that state

3    law imposes such a duty on defendant Cate – a duty to direct the procedures and officials which

4    caused plaintiff's over-detention.  Plaintiff contends that Cate's failure to exercise any

5    involvement fell below the standard required by California law, making him liable under a theory

6    of res ipsa loquitur.

7              Defendants reply that because it is undisputed that defendant Cate had no

8    involvement herein, defendant Cate was not the proximate cause of the over-detention, and that it

9    was not foreseeable that defendant James would fail to comply with a court order.

10             Here, a district court's ruling from the Northern District is instructive:

11             In California, an employer may be liable to a third party for
               negligence in hiring an incompetent or unfit employee.
12             Underwriter[s] Ins. Co. v. Purdie, 145 Cal.App.3d 57, 69, 193
               Cal.Rptr. 248 (Cal.Ct.App.1983).  An employer must have
13             knowledge or a reason to know that hiring an employee "created a
               particular risk or hazard and that particular harm materializes."
14             Doe v. Capital Cities, 50 Cal.App.4th 1038, 1054, 58 Cal.Rptr.2d
               122 (Cal.Ct.App.1996).  The Court need not address the question
15             of whether [Warden] Brown possesses the requisite knowledge of
               risk.  A more fundamental flaw in plaintiff's negligent hiring claim
16             is the failure to establish a legal duty owed by Brown for
               non-negligent hiring, a duty that Brown allegedly breached in
17             causing plaintiff's injuries.  A common law tort involves "a
               violation of a legal duty, imposed by statute, contract or otherwise,
18             owed by the defendant to the person injured. Without such a duty,
               any injury is an injury without wrong." 5 Witkin, Summary of Cal.
19             Law (9th ed. 1988) Torts § 6, p. 61. Taking all the briefs and
               materials submitted as true, the Court cannot find that Brown's
20             employment as warden at San Quentin encompassed the duty to
               hire prison staff, and plaintiff does not allege in any way that
21             Brown was involved in the hiring of the Doe defendants.

22   Lemas v. Brown, 2008 WL 361132 (N.D. Cal. 2008).  "With respect to CDCR employees, only

23   management personnel at the CDCR, or their designees, have the statutory authority to hire and,

24   therefore, discipline, CDCR employees.  See Cal. Code Regs., tit. 15, §§ 3391-3416 (governing

25   employee conduct and hiring practices)."  Chatman v. Early, 2009 WL 837466 (N.D. Cal. 2009).

26   The court adopts the reasoning in Lemas; if a warden does not have a legal duty for non-

                                                42

1  negligent hiring of a prison staff, the Secretary of the CDCR does not have such a legal duty.

2  Taking plaintiff's filings as true, the court cannot find that Cate's employment as Secretary of the

3  CDCR included the duty to hire, or discipline prison staff, and plaintiff does not allege in any

4  way that defendant Cate was involved in the hiring, or disciplining of defendant James.

5          Moreover, plaintiff has not identified a regulation, or the failure to have a

6  particular regulation, that resulted in plaintiff's alleged over-detained.  Rather, had defendant

7  James followed the established regulations and procedures, and properly changed plaintiff's

8  release date to June 18, 2002, as provided in the May 23, 2008 court order, plaintiff would have

9  been released earlier from the BOP.  In addition, plaintiff adduced no evidence of defendant

10  Cate's involvement or knowledge concerning plaintiff's alleged over-detention, or confirming

11  defendant Cate's role in addressing plaintiff's claims herein, or in directly supervising defendant

12  James or any other individual responsible for plaintiff's alleged over-detention.

13          Finally, as argued by defendant Cate, it was not reasonably foreseeable that

14  defendant James would fail to update plaintiff's release date when presented with the May 23,

15  2008 order from the Santa Clara County Superior Court.  Accordingly, the court finds no triable

16  issue of material fact exists on plaintiff's remaining state law claims as to defendant Cate, and

17  grants defendant Cate's motion for summary judgment on plaintiff's remaining state law claims.

18  T.W. Elec. Service, Inc., 809 F.2d at 630.

19  VIII.  Conclusion

20          In light of this order, this action proceeds on plaintiff's federal constitutional

21  claims under the Fourth, Ninth, and Fourteenth Amendments, including equal protection and due

22  process claims, against defendant James (from May 23, 2008); plaintiff's false imprisonment

23  claims against defendants CDCR, and James (from May 23, 2008); plaintiff's intentional

24  infliction of emotional distress claim against defendant James (from May 23, 2008); plaintiff's

25  negligence and negligent infliction of emotional distress claims against defendants James (from

26  May 23, 2008), and the CDCR; and plaintiff's negligent hiring claims against the CDCR.

1   Accordingly, IT IS HEREBY ORDERED that

2   A. defendants' motion for summary judgment is granted in part, and denied in

3 part, as follows:

4     1. Granted as to plaintiff's federal constitutional claims against defendant

5 James prior to May 23, 2008, and denied as to the constitutional claims under the Fourth, Ninth,

6 and Fourteenth Amendments, including equal protection and due process claims, after May 23,

7 2008; defendant James is not entitled to qualified immunity;

8     2. Denied as to plaintiff's false imprisonment claim against defendant

9 CDCR;

10     3. Granted as to plaintiff's false imprisonment claim as to defendant

11 Brown;

12     4. Granted as to plaintiff's false imprisonment claim against defendant

13 James prior to May 23, 2008, and denied as to those claims after May 23, 2008;

14     5. Denied as to plaintiff's intentional infliction of emotional distress

15 claim, and negligence and negligent infliction of emotional distress claims against defendant

16 James after May 23, 2008; but granted as to those claims prior to May 23, 2008; and

17     6. Granted as to plaintiff's false imprisonment, negligence, negligent

18 infliction of emotional distress, and negligent hiring claims against defendant Cate.

19    B. Pursuant to Local Rule 133(j), the Clerk of the Court shall file the deposition

20 transcript of Karen Elliott in the instant case docket.

21 DATED:  August 28, 2012

22

23

24 /ward0019.msj

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

25

26